UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | No. 7:25-CR-09-GFVT |
| v. | ) ) | |
| | ) | RECOMMENDED DISPOSITION |
| JEREMY T. BRYSON, | ) ) ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On July 31, 2025, Defendant Jeremy T. Bryson, through retained counsel, filed a motion to suppress evidence that was collected from a cellphone pursuant to a search warrant issued by Magistrate Judge Atkins. D.E. 31. Bryson also filed portions of the warrant materials, including the affidavit in support. D.E. 32. On August 13, the government responded in opposition, and filed the warrant and Attachments E and F, which had been omitted from Bryson's filing. D.E. 40. The government argues Bryson's motion is both untimely and fails on the merits. *Id*. On August 29, 2025, Bryson filed a reply, addressing both timeliness and the merits. D.E. 45. Magistrate Judge Atkins has reassigned the suppression motion to the undersigned. D.E. 41.

The Court finds the motion was untimely filed and Bryson has not established good cause for the untimely filing. Nevertheless, because of the important constitutional issue involved, the Court recommends addressing the motion on the merits despite its untimely filing.

As to the merits, if the warrant was overbroad, it was only overbroad to the extent that it lacked a time limitation for the evidence that was to be seized. The remedy for such overbreadth would be to suppress the evidence that was generated outside the time period for which there was

probable cause (here, evidence prior to January 31, 2019, when the clinic opened under Bryson's ownership). However, the government has represented that it has no evidence that originated prior to January 31, 2019, that it intends to use for trial. Accordingly, the Court does not need to rule on whether the warrant was temporally overbroad because the given remedy is moot. On this basis, the motion can be denied on the merits.

### I. Background

On March 6, 2025, Bryson, a licensed pharmacist, was indicted for (1) conspiracy to unlawfully dispense controlled substances through Appalachian Family Medicine, (2) conspiring to unlawfully use another provider's registration number, and (3) using criminally derived property to buy a Dodge Ram. D.E. 1.

Bryson appeared via summons on March 25, with retained counsel Stephen W. Owens, and was released on conditions. D.E. 11. Ronald W. Chapman II joined the defense team in early May. D.E. 19, 20. Mr. Owens withdrew from representation in mid-July. D.E. 27, 28. Attorney John J. Dowling III was also retained counsel for a time, as he was a signatory to a Protective Order filed on August 6. D.E. 35. On August 29, 2025, Mr. Chapman filed a notice that Mr. Dowling was withdrawing from the case. D.E. 44.

Trial is currently set for December 2, 2025, with a telephonic pretrial conference on November 20. D.E. 43.

Long before Bryson was indicted, on January 18, 2022, Magistrate Judge Atkins issued a search warrant designated as 7:22-MJ-05-EBA (the "Cellphone Warrant"). D.E. 40-1. The target of the warrant was "A CELLULAR TELEPHONE UTILIZED BY JEREMY BRYSON AND ASSIGNED NUMBER (606) 505-3484." D.E. 40-1 at 1. The affidavit in support of this

2

warrant (D.E. 32 at 4-42[1]) was used to secure three warrants, including one for Appalachian Family Medicine. The Cellphone Warrant authorized seizure of the property described in Attachment E for the evidence described in Attachment F. D.E. 40-1 at 1. Attachment E states:

> The property to be seized and searched is a cellular telephone being utilized by Jeremy Bryson, assigned phone number (606) 505-3484 ("Target Phone #2")
>
> This warrant authorizes the forensic examination of Target Phone #2 for the purpose of identifying the electronically stored information described in Attachment [F[2]].

D.E. 40-1 at 3. Attachment F then describes the evidence to be collected through forensic examination:

> 1. All evidence on Target Phone #2 described in Attachment [E] that relate to violations of 21 U.S.C. §§ 841 and 846, involving Don Bryson, Jeremy Bryson, and others affiliated with Appalachian Family Medicine (AFM), including:
>
>     a. All evidence relating to the unlawful dispensing of controlled substances;
>
>     b. Communications, records and photographs related to AFM such as policies and procedures, memos, emails and other digital communications, employee directives, and any other information relating in any way to the issuance of prescriptions;
>
>     c. Evidence of communications with pharmacies or other providers of medical care;
>
>     d. Evidence of any complaints made to AFM, or its employees, about its controlled substance prescriptions, whether made by the phone's user, a pharmacy, patient, provider, or any other individual or entity;
>
>     e. Evidence reasonably indicating the device user's state of mind as it relates to the crime under investigation;
>
>     f. Evidence that may identify any co-conspirators or other persons relevant to the particular crimes under investigation, including records that help

---

[1] Page number citations refer to the blue numbers generated by ECF.

[2] There is a typographical error here, as it says "Attachment B," where in context the clear reference is to Attachment F. Similar typographical errors are found in Attachment F.

3

        reveal their whereabouts.

    g.    Any information recording the device's user's schedule or travel;

    h.    Any information necessary to show the location of the phone.

2.    Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, pictures, videos, documents, and browsing history.

    As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

    During the execution of the search of Target Phone #2 described in Attachment [E], law enforcement personnel are authorized to (1) press or swipe the fingers (including thumbs) of any individual who is reasonably believed by law enforcement to be a user of Target Phone #2 to the fingerprint scanner of the device; (2) hold Target Phone # 2 in front of any individual who is reasonably believed by law enforcement to be a user of Target Phone #2 and activate the facial recognition feature, for the purpose of attempting to unlock the device in order to search the contents as authorized by this warrant.

*Id*. at 4-5. As can be seen, Attachment F includes no time limitations on the evidence to be collected.

One issue here is the timing of the motion. When Bryson first appeared on March 25, 2025, the Court entered a Scheduling Order which required that defensive motions (such as motions to suppress) be filed within thirty days of arraignment. D.E. 13. That thirty-day period expired on April 24, 2025. No motion to extend the defensive-motions deadline was filed. Bryson's motion to suppress was filed by Mr. Chapman three months and seven days overdue, on July 31, 2025.

Bryson's argument for suppression is that the Cellphone Warrant was invalid because it had "no limitation on timeframe;" it "fails to limit the search to evidence created during a particular timeframe." D.E. 31 at 3. Although the original motion gestures at an issue with

4

*content* overbreadth, Bryson's reply brief makes clear that his argument is that "the lack of a temporal constraint on the search renders it a general warrant." D.E. 45 at 4. Thus, in the Court's view, the briefing has narrowed the suppression issue in this case down to the question of whether the Cellphone Warrant was overbroad on account of its failure to specify a time frame for the evidence to be collected from the phone.[3]

## II. Timeliness of the Motion

There is no dispute that dispositive motions were due by April 25, 2025, and that the motion to suppress was not filed until July 31, 2025. And the defense never filed a motion to extend the dispositive-motions deadline. Federal Rule of Criminal Procedure 12(c) provides that a Court "may extend or reset the deadline for pretrial motions." And, when a motion to suppress is untimely filed, the Court "may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c). Under the Local Rules, "Extensions of time in criminal actions will be granted only if the party seeking the extension files a motion demonstrating good cause." Joint Local Criminal Rule 47.1(b).

Here, the government argues in its response to the motion to suppress that the suppression motion should be denied as untimely. D.E. 40 at 3-5. Bryson's reply brief argues that the Court should excuse the late filing due to good cause. Bryson says "the current defense team" did not even join the case until after the defensive-motions deadline expired and did not receive discovery until May 15, 2025. D.E. 45 at 3. "Given the volume of discovery in this case, it was reasonable for defense counsel to require several weeks to evaluate various issues and challenges to evidence—including suppression." *Id*.

---

[3] It appears the defense overlooked Attachments E and F in preparation of the motion to suppress and inaccurately characterized the Cellphone Warrant as a "top to bottom" warrant. D.E. 31 at 10-11. In turn, the argument that there are no limitations "whatsoever" and the Cellphone Warrant was therefore necessarily a general warrant lacks any merit.

5

While it may be true that the motion to suppress—itself—could not have been filed earlier, nothing prevented the defense from preserving their ability to file a defensive motion by moving to extend that deadline at any earlier point in their representation of Bryson. And Bryson does not even acknowledge the tardiness of the filing in the suppression motion itself. On this record, the Court cannot find good cause for failing to seek a deadline extension prior to filing the suppression motion.

Nevertheless, despite the lack of good cause for an extension, the Court recommends reaching the merits of the suppression motion due to the constitutional importance of the issue presented and the potential prejudice to Bryson if his motion is not heard.

### III. Legal Standards for Search Warrants

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. It provides, in relevant part, that, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

The government bears the burden of showing probable cause *in connection with a search warrant*. *Stucker v. Louisville Metro Gov't*, No. 23-5214, 2024 WL 2135407, at *6 (6th Cir. May 13, 2024); *United States v. Abboud*, 438 F.3d 554, 569 (6th Cir. 2006) (citing Fed. R. Crim. P 41(c)).

Probable cause is defined as reasonable grounds for belief; probable cause requires more than mere suspicion, but it does not require *prima facie* proof. *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016). The critical element is that there must be reasonable cause to believe that the specific things to be searched for and seized are located at the target property. *Id*.

6

When determining whether an affidavit establishes probable cause, courts look only within the four corners of the affidavit; information known to the officer but not conveyed to the magistrate is normally irrelevant. *Abernathy*, 843 F.3d at 249. The analysis should center on "the adequacy of what the affidavit does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Dyer*, 580 F.3d 386, 391 (6th Cir. 2009) (quoting *United States v. Allen,* 211 F.3d 970, 975 (6th Cir. 2000) (*en banc*)). Here, no evidentiary hearing is needed because the Court's review is cabined to the Cellphone Warrant and its supporting materials.

In reviewing a magistrate's decision to issue a warrant, the Court must accord the magistrate's determination great deference. *Abernathy*, 843 F.3d at 250. The question is whether the magistrate had a "substantial basis" for finding the affidavit established probable cause. *United States v. Braden*, 248 F. App'x 700, 702 (6th Cir. 2007) (quoting *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001)). And courts should review the sufficiency of the affidavit "in a commonsense, rather than hypertechnical manner." *Greene*, 250 F.3d at 479.

To properly support a warrant, the affidavit must contain "adequate supporting facts about the underlying circumstances to show that probable cause exists." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996). These supporting facts need not be based on the direct knowledge and observations of the affiant; they may also come from hearsay information supplied by an informant. *Id*. "From whatever source, the information presented must be sufficient to allow the official to independently determine probable cause; the judge's action cannot be a mere ratification of the bare conclusions of others." *Id*.

### IV. The Warrant's Lack of Temporal Limitation

There is no dispute that nothing in the warrant specifically limits the seizable evidence to

evidence generated during a particular timeframe. The Cellphone Warrant is, however, specific about the item to be searched—Bryson's phone (Attachment E). And it is specific about the types of evidence to be seized, as delineated in Attachment F. Attachment F authorizes seizure of "[a]ll evidence on Target Phone #2 described in Attachment [E] that relate[s] to violations of 21 U.S.C. §§ 841 and 846, involving Don Bryson, Jeremy Bryson, and others affiliated with Appalachian Family Medicine (AFM) , including [multiple categories of evidence]." D.E. 40-1 at 4. The Court does not consider the categories of evidence described in Attachment F to be overbroad. And Bryson has not identified any particular categories as being overbroad in the sense of being unsupported by probable cause.

The affidavit in support of the Cellphone Warrant describes the alleged criminal activity. It begins by stating "there is probable cause to believe that records of illegitimate prescribing, as well as other evidence related to a conspiracy to distribute controlled substances are located at AFM [Appalachian Family Medicine]." D.E. 32 at 7.

> The Cellphone Warrant affidavit also describes the beginning of the investigation:
>
> The underlying investigation [began] after investigators became aware of an April 2021 complaint a board-certified physician submitted to the Kentucky Board of Medical Licensure. The complaining physician had worked at AFM for a short time and voiced concerns about AFM's operations and treatment of patients, including the scheduled medications being prescribed at the facility.
> . . . .
>
> [According to the complaining physician,] AFM is a sham operation designed to deliver Neurontin and Norco on a cash basis with virtually no intent to provide medical care on the part of the "owners."

D.E. 32 at 11-12. And the "active investigation" began "in mid-June of 2021." *Id*. at 13. The affidavit also establishes that Bryson "utilized" the targeted cellphone "to conduct AFM business." *Id*. at 35-36.

8

"[D]etermining the permissible parameters for a cell phone search is a fact-intensive inquiry and must be resolved based on the particular facts of each case." *Richardson v. State*, 282 A.3d 98, 119 (Md. 2022) (quoting *Commonwealth v. Snow*, 160 N.E.3d 277, 288 (Mass. 2021)).

What date range was supported by probable cause? According to the government,

> the supporting affidavit made clear that AFM's operations began in early 2019, noting that Bryson filed a business permit application with the city of Paintsville on January 31, 2019. [D.E. 32-1 at 10.] Thus, the Subject Warrant's reference to specific crimes relating to an entity that operated for finite period necessarily limited the scope of the search.

D.E. 40 at 15. Defendant's reply brief also states that "AFM began operating in 2019." D.E. 45 at 5.[4] The Court thus finds the warrant-application materials provide probable cause to seize evidence generated as far back as January 31, 2019.[5] Since the alleged conspiracy involves Bryson working through AFM, it is unreasonable to extend the search to evidence that predates the opening of AFM under Jeremy Bryson's ownership, without something in the affidavit supporting such an enlarged timeframe. Otherwise, the Cellphone Warrant establishes probable cause to search Bryson's phone for evidence of the alleged crimes involving AFM.

The parties agree that failure to limit a warrant-backed search to evidence from a particular timeframe can render a warrant overbroad in at least some cases. The caselaw here is

---

[4] In the interest of precision, the Court notes that the affidavit alleges that Don Bryson "sold AFM to his son Jeremy Bryson" in 2012. D.E. 32 ¶ 23. The affidavit then states that, on January 31, 2019, Jeremy Bryson, the defendant here, "filed a Business License Permit Application with the city of Paintsville, KY" for an entity called The Talmadge Group, d/b/a Appalachian Family Medicine, listing himself as owner. *Id.* ¶ 24. The Court interprets the record as indicating that AFM ceased operating for a time between 2012 and 2019. For purposes of this motion, the Court also takes judicial notice of AFM's public Facebook page. Its first post is dated February 7, 2019. And its second post, from the same date, states, "Preparing for opening Day February 18, 2019." Appalachian Family Medicine, https://www.facebook.com/p/Appalachian-Family-Medicine-100054625892638.

[5] Again, based on the existing briefs, the Court does not believe there is a dispute between the parties as to whether the warrant-application materials establish probable cause *in general*. Setting aside the meritless argument that the warrant is a "general warrant," Defendant's sole substantive argument is that the warrant is deficient due to the omission of a timeframe.

9

tricky, though. It looks like some courts in the Circuit would find the Cellphone Warrant overbroad, but others would not, depending on whether or how they might apply certain language from a case known as *Ford*. However, the Court need not reach this question because, even if the Cellphone Warrant is temporally overbroad, Defendant has no remedy here.

After reviewing caselaw on the subject, the Court believes the nationwide trend in cellphone/computer-warrant cases is to require temporal limitations on the evidence to be seized, unless there is no known factual basis for establishing a temporal limitation (or the warrant materials articulate some other compelling reason for not including a temporal limitation). This trend also includes finding that the good-faith exception to the exclusionary rule does not prevent suppression of evidence seized outside a reasonable timeframe. These concepts will be explored in more detail below.

The general rule here is that "[f]ailure to limit broad descriptive terms by relevant dates, *when such dates are available to the police*, will render a warrant overbroad." *United States v. Ford*, 184 F.3d 566, 576 (6th Cir. 1999) (emphasis added); *see also United States v. Broughton*, No. 2:24-CR-04-DLB-CJS, 2024 WL 5396564, at *5 (E.D. Ky. Nov. 25, 2024), *report and recommendation adopted*, 2025 WL 53140 (E.D. Ky. Jan. 9, 2025); *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 459 (S.D.N.Y. 2013); *United States v. Costin*, No. 3:05-CR-38 JCH, 2006 WL 2522377, at *12 (D. Conn. July 31, 2006).

On the other hand, delineating a time period is not necessary (and the warrant is not overbroad) when the issuing judge lacks sufficient information to pinpoint when the alleged criminal activity began. *United States v. Roos*, No. 7:12-CR-09-ART-HAI-2, 2013 WL 1136638, at *9 (E.D. Ky. Jan. 24, 2013) (quoting *United States v. Sissler*, 966 F.2d 1455 (6th Cir. 1992)), *report and recommendation adopted*, 2013 WL 1136629 (E.D. Ky. Mar. 18, 2013).

It is only when the authorities "are aware of the dates of criminal activity" that "failure to limit broad descriptive terms in a warrant to those dates renders the warrant overbroad." *United States v. Taylor*, No. 6:21-CR-13-GFVT-HAI-1, 2022 WL 17582270, at *7 (E.D. Ky. Dec. 12, 2022) (citing *United States v. Lazar*, 604 F.3d 230, 238 (6th Cir. 2010); *Ford*, 184 F.3d at 576).

Is this a case where the investigators were aware of the dates of the alleged criminal activity, and thus the issuing judge had some basis for imposing a timeframe limitation? The answer is yes, based on the dates provided in the affidavit in support of the Cellphone Warrant. As previously noted, the parties agree that Bryson began operating AFM around January 31, 2019, when he sought a permit for the business. *See* D.E. 32 at 13 (paragraph 24 of the affidavit in support of the Cellphone Warrant). The warrant does not establish probable cause for seizing evidence created prior to that date.

Nevertheless, there is a line of cases in this Circuit, dating to a 1999 published Sixth Circuit decision, that appears to provide a loophole around the rule that searches of cellphones/computers must be limited by a timeframe when feasible. That 1999 case is *United States v. Ford*, 184 F.3d 566 (6th Cir. 1999). *Ford* has been cited in multiple jurisdictions for the proposition that failure to limit a search warrant's description of items to be seized "by relevant dates, when such dates are available to the police, will render a warrant overbroad." *Id*. at 576. However, the Court in *Ford* considered two different search warrants. The first (in a tax-crimes investigation) was found to be overbroad when the oldest business being searched "was incorporated in December 1991, and there was no indication in the affidavit of criminal activity before that date." *Id*. The Court ordered suppression of evidence that was generated between 1984 and 1988. *Id*. The similarity to this case is obvious, as the Cellphone Warrant, at least on its face, appears to authorize seizure of evidence that predated the operation of the business

under investigation.

The second warrant discussed in the *Ford* opinion is a warrant for evidence of gambling crimes. The Court's analysis here is terse and difficult to follow, but it elides suppression on account of a subject-matter limitation in the warrant:

> [Defendants] contend that the district court should have suppressed the evidence seized in the August 28-29 search in the gambling case as well as the tax case. They argue that since the warrant was overbroad, all the evidence seized under it should be suppressed. To the contrary, the remedy for an overbroad warrant is to sever the overbroad portions of the warrant from those portions that are sufficiently particular. *United States v. Blakeney*, 942 F.2d 1001, 1027 (6th Cir.), *cert. denied*, 502 U.S. 1008 (1991). **The portions of the warrant limited to fruits and evidence of gambling are sufficiently particular; even though those portions do not contain a time limitation, their subject-matter limitation (fruits and evidence of gambling) fulfills the same function as a time limitation would have done, by limiting the warrant to evidence of the crimes described in the affidavit.** The portions of the warrant limited to fruits and evidence of bingo can be severed from the part of the warrant which is not so limited. Therefore, seizure of the documents pertaining to the gambling and the closely related money laundering charges was permissible.

*Ford*, 184 F.3d at 578 (emphasis added).

The government in this case relies on the emphasized language in the above quote, arguing that Bryson's warrant is valid despite the lack of a time limitation because the warrant limits the seizure to evidence of drug trafficking. The government also asks the Court to look to the affidavit, and appears to suggest that, because the affidavit says AFM began in January 2019, this fact functions as something of a time limitation. In other words, the warrant itself may not have contained an express time limitation, but the government contends that limitation should be inferred from the 39-page affidavit. The argument is as follows:

> Bryson claims that the Subject Warrant was defective "because it lacks a temporal component." [R. 31: Motion at PageID# 110.] Although express date ranges are sometimes appropriate constraints for search warrants, the Sixth Circuit has instructed that "a subject matter limitation," such as the limitation provided by the specific crime can "fulfill[ ] the same function as a time limitation would have

12

> done[.]" *Ford*, 184 F.3d at 578; *see also United States v. Sullivan*, 751 F. App'x 799, 805 (6th Cir. 2018) (holding that "the failure to specify a timeframe" in warrant did not invalidate a search of a laptop because the "warrant specified a subject-matter limitation sufficient to limit the warrant to evidence of the crimes described in the affidavit—namely, files related to [the offense under investigation]").
>
> Here, the Subject Warrant limited the search of Bryson's phone to evidence of specific offenses stemming from AFM's operations. [*See* Gov. Ex. 1: Attachment F (authorizing search for evidence of "violations of 21 U.S.C. §§ 841 and 846, involving Don Bryson, Jeremy Bryson, and others affiliated with Appalachian Family Medicine.").] In turn, the supporting affidavit made clear that AFM's operations began in early 2019, noting that Bryson filed a business permit application with the city of Paintsville on January 31, 2019. [R. 32-1: Def. Ex. A, Warrant Affidavit at 10.] Thus, the Subject Warrant's reference to specific crimes relating to an entity that operated for finite period necessarily limited the scope of the search. *See United States v. Nester*, No. 23-1727, 2024 WL 4615777, at *6 (6th Cir. Oct. 30, 2024) (warrant not overbroad despite lack of express date limitation because "[r]eading the warrant holistically, the affidavit's mention of [the specific crimes under investigation] inherently limited the search for evidence [the crimes under investigation]. The warrant's scope was therefore confined to a specific time period."); *see also United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 307 (S.D.N.Y. 2018) ("There was no need for an explicit time limit as the subject matter limitations on seizure effectively limited the time frame concerned.")[.]

D.E. 40 at 14-15.

Some cases in this Circuit cohere with this approach. They, relying on the *Ford* Court's analysis in the gambling case, find that a warrant's subject-matter limitation (as to the crimes being investigated) salvages a search warrant that lacks an otherwise articulable time constraint. *See, e.g.*, *United States v. Sullivan*, 751 F. App'x 799, 804-05 (6th Cir. 2018) ("Here, as in *Ford*, the laptop warrant specified a subject-matter limitation sufficient to limit the warrant to evidence of the crimes described in the affidavit—namely, files related to child pornography."); *United States v. Bartlett*, No. 1:23-CR-20676, 2024 WL 4533554, at *16 (E.D. Mich. Oct. 21, 2024) ("[E]ven if the warrants could be faulted for not placing temporal limitations on the records subject to seizure, such fault is not fatal. Courts within the Sixth Circuit recognize that a warrant

13

is invalid only if it lacks both a temporal and a subject-matter limitation."); *United States v. Sollars*, No. 19-CR-20836, 2023 WL 4542297, at *6-7 (E.D. Mich. July 14, 2023) (relying on facts in the affidavit and applying *Ford*); *United States v. Glatz*, No. 3:19-CR-218-TAV-DCP, 2023 WL 4503981, at *30 (E.D. Tenn. May 1, 2023) (following *Sullivan*), *report and recommendation adopted*, 2023 WL 4351503 (E.D. Tenn. July 5, 2023); *Libretti v. Woodson*, No. 1:13-CV-932, 2013 WL 6634249, at *8-9 (N.D. Ohio Dec. 17, 2013) ("Because the warrant in the instant case contains a subject-matter limitation (fruits and evidence of drug-trafficking), its failure to contain a time limitation does not violate the Fourth Amendment."), *aff'd*, 600 F. App'x 367 (6th Cir. 2015); *United States v. Harmon*, No. 3:05-CR-113, 2006 WL 3913439, at *13 (E.D. Tenn. Apr. 4, 2006) ("[While the broad descriptive terms of things to be seized lacks relevant dates,] their subject-matter limitation (fruits and evidence of drug trafficking activities) fulfills the same function as a time limitation would have done, by limiting the warrant to evidence of the crimes described in the affidavit."), *report and recommendation adopted sub nom. United States v. Hatcher*, 2007 WL 108897 (E.D. Tenn. Jan. 9, 2007).

However, there are some cases in this Circuit where this special *Ford* exception is never discussed (and evidence is suppressed) when the warrant had no time limitation and there is no discussion as to whether a subject-matter limitation existed. *United States v. Lazar*, 604 F.3d 230, 238 (6th Cir. 2010); *United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006); *United States v. Demasi*, 715 F. Supp. 3d 1009, 1017 (E.D. Mich. 2024); *United States v. Donall*, No. 1:07CR77, 2007 WL 2029633, at *6 (W.D. Mich. July 10, 2007).

Looking outside this Circuit, the trend appears to be requiring suppression when there were facts before the magistrate that suggested an appropriate time limitation, but no time limitation was included in a warrant to search an electronic device or similarly broad target. *See,*

14

*e.g.*, *United States v. Gross*, No. 25-CR-4021-LTS-KEM, 2025 WL 1833818, at *4 n.17 (N.D. Iowa July 3, 2025) (citing *Lazar* and suppressing evidence from outside the timeframe supported by probable cause), *report and recommendation adopted*, 2025 WL 2058776 (N.D. Iowa July 23, 2025); *United States v. Winn*, 79 F. Supp. 3d 904, 921 (S.D. Ill. 2015) (citing published cases from three federal circuits holding that "[a]n unadorned reference to a broad federal statute does not sufficiently limit the scope of a search warrant" when an appropriate time-frame limitation was overlooked).

> One recent opinion from the Supreme Court of Michigan explains:
>
> Many cases . . . emphasize the importance of temporal limitations on the data to be searched. *See Commonwealth v Snow*, 160 N.E.3d 277 (Mass. 2021) ("The magnitude of the privacy invasion of a cell phone search utterly lacking in temporal limits cannot be overstated."). This emphasis is unsurprising in the context of cell phones and digital data. *Riley* [*v. California*, 573 U.S. 373, 394 (2014)] (noting the privacy consequences of cell-phone searches considering that "the data on a phone can date back to the purchase of the phone, or even earlier"). And such temporal information will generally be easy to include in the search warrant. That is, even if the drafter of a search warrant cannot specifically describe the evidence sought, generally an investigating officer will be able to identify a relevant time frame for the criminal activity. Put simply, when information concerning the relevant time frame of the criminal activity exists, this time limitation should be included in the search warrant to ensure adequate particularity. . . . *See State v Short*, 964 N.W.2d 272 (Neb. 2021) ("The most important constraint in preventing unconstitutional exploratory rummaging is that the warrant limit the search to evidence of a specific crime, ordinarily within a specific time period, rather than allowing a fishing expedition for all criminal activity."); *Richardson* [*v. State*, 282 A.3d 98, 118 (Md. 2022)] ("Perhaps the most common limitation that issuing judges should consider including in a warrant to satisfy the particularity requirement is a temporal restriction."); *see also Terreros v State*, 312 A.3d 651, 668 (Del. 2024); *State v Smith*, 278 A.3d 481 (Conn. 2022); *People v Coke*, 461 P.3d 508, 516 (Co. 2020) (all concluding that warrants lacking time restrictions violated the particularity requirement); *State v Mansor*, 421 P.3d 323 (Or. 2018) (reaching a similar conclusion under the state constitution).

*People v. Carson*, No. 166923, __ N.W.3d __, 2025 WL 2177501, at *9 & n.18 (Mich. July 31, 2025).

15

It does seem appropriate that, "given the privacy interests at stake in a cell phone search," a "temporal restriction in an initial search warrant for a cell phone should err on the side of narrowness, especially in light of the officers' ability to apply for a new warrant if, during the initial search, they uncover information giving rise to probable cause to broaden their search of the cell phone." *Richardson*, 282 A.3d at 119 (quoting *Commonwealth v. Snow*, 160 N.E.3d 277, 288 (Mass. 2021)).

To be clear, a lack of appropriate time restrictions renders a warrant "overly broad, not general." *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 151 (3d Cir. 2002).

Assuming, without deciding, that the Cellphone Warrant was overbroad due to lack of a timeframe limitation, this finding would not mean that *all* evidence seized under the cellphone warrant is subject to suppression. **The proper remedy is to suppress only the evidence that was generated during time periods for which probable cause was not established.** A finding of temporal overbreadth "does not require suppression of all of the items seized pursuant to the warrant[. Rather,] the proper approach to this dilemma is to sever the infirm portion of the search warrant from the remainder which passes constitutional muster." *Abboud*, 438 F.3d at 576 (quoting *United States v. Blakeney*, 942 F.2d 1001, 1027 (6th Cir. 1991)); *accord Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d at 151; *Ford*, 184 F.3d at 578.

Accordingly, the remedy here would be to sever (and suppress) only the evidence that predated January 31, 2019.

The Court conducted a teleconference on September 18, 2025, and posed a targeted question to the parties: "whether the government possesses evidence seized from Bryson's

phone that predates January 31, 2019, that the government intends to use at trial?" D.E. 47. The government's answer was unequivocal: "The government made clear that the answer is no. The government is not in possession of any evidence created before January 31, 2019, that was seized from Bryson's phone. No such evidence would be introduced at trial." D.E. 48 (minutes).

What this means is, assuming the Cellphone Warrant is overbroad and evidence that predates January 31, 2019 is suppressible, on this record there is simply nothing to suppress. Stated differently, there is no prejudice to Bryson from any temporally overbroad portion of the Cellphone Warrant.

Given this determination (that no real remedy is available), the Court need not delve into the potential application of the good-faith exception to the exclusionary rule. *See United States v. Higgins*, 557 F.3d 381, 391 (6th Cir. 2009) (quoting *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984)); *Abboud*, 438 F.3d at 578; *Demasi*, 715 F. Supp. 3d at 1019-20; *Donall*, 2007 WL 2029633, at *7.

The Court here does not make a finding that the Cellphone Warrant was overbroad. But, even if it was temporally overbroad, the available remedy would provide Bryson no relief.

## V. Conclusion

For the reasons discussed above, the undersigned hereby **RECOMMENDS** that Bryson's motion to suppress (D.E. 31) be **DENIED**. Reaching the merits (despite the untimely filing of the motion), even assuming that the warrant was temporally overbroad, Bryson has no remedy. There is no evidence the government intends to use against Bryson that was collected outside the arguable timeframe supported by probable cause.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As

defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 22nd day of September, 2025.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge